SIMON WALTER and others *vs.* WILLIAM LIND and others.

A agreed to convey to B a tract of land for $500. B applied to C for a loan of that amount. C agreed to loan B $550 upon his giving a mortgage upon the said tract for $850, with interest at seven per cent. Upon agreement between the parties, A executed a deed to B for the land for the nominal consideration of $850; B giving A a bond and mortgage for that amount. A assigned the mortgage to C in pursuance of the agreement for $550; $50 in cash to be paid to B. Of this amount nothing was actually paid to B. Upon a bill to foreclose, filed by C, to recover the nominal consideration of $850, *Held—*

1. The transaction, though in form a sale and mortgage for $850, in reality was a sale and mortgage for $500.

2. The mortgage was not usurious. It was made for a legitimate purpose, though for a larger amount than was really due. There being no usury in the inception of the contract, no subsequent transaction can render it usurious.

3. The complainants are entitled to the $500, actually advanced by them to the mortgagee. The contract by which they claim $350 beyond that amount was usurious, and cannot be enforced. Under such circumstances, the mortgage will be deemed a security for the amount actually advanced.

---

*J. Whitehead,* for the complainants.

I. Usury, in the answer of the defendants, Lind and wife, is not pleaded according to the facts of the case.

Usury must be pleaded in accordance with the facts, and the proof must support the plea. *Smith* v. *Brush,* 8 *Johns. R.* 84; *Tate* v. *Wellings,* 3 *T. R.* 531, Lord Kenyon's opinion, page 538; *Lawrence* v. *Knies,* 10 *Johns. R.* 140; *Fulton Bank* v. *Beach,* 1 *Paige* 429; *Rowe* v. *Phillips,* 2 *Sandf. Ch. R.* 14; *Hetfield* v. *Newton,* 3 *Ibid.* 564; *Vroom* v. *Ditmas,* 4 *Paige* 526; 8 *Paige* 452.

II. A security uncontaminated with usury at its inception, is not affected by any subsequent usurious transaction. *Gray* v. *Fowler,* 1 *H. Black.* 463; *Pollard* v. *Scholy, Croke Eliz.* 20; *Rex* v. *Allen,* 1 *Mod.* 69; *Ballard* v. *Oddey,* 2 *Mod.* 307; *Rex* v. *Sewell,* 7 *Mod.* 119; *Brown* v. *Fulsbye,* 4 *Leon.* 43; *Body* v. *Tassell,* 3 *Leon.* 205; *Fussel* v. *Brooks,* 2 *Carr.*

*& P.* 318; *Pearsall* v. *Kingsland,* 3 *Edw. Ch. R.* 195; *Bush* v. *Livingston,* 2 *Caines' Cases in Error* 66; *Ferral* v. *Shaen,* 1 *Saund.* 295, *note* 1; *Sloan* v. *Sommers,* 2 *Green's R.* 510; *Donnington* v. *Meeker,* 3 *Stockt.* 362.

III. A sale of a promissory note or bond, although for an amount which, if calculated with reference to interest on the principal, would amount to usury, does not vitiate the security. *Donnington* v. *Meeker,* 3 *Stockt.* 362; *Munn* v. *Commission Co.,* 15 *Johns. R.* 44.

IV. The transaction which gives rise to the controversy in this cause, amounts to nothing more nor less than a mere change of one security for another.

The deed from Lind to Swift was but a mere mortgage, and it was exchanged for a bond and mortgage.

Lind was the agent of Swift, employed to sell that bond and mortgage. It was, therefore, Swift's act.

It makes no difference to Lind whether Swift still held the deed, or bond and mortgage. He would be equally bound to pay $850 in either case.

Lind owed Swift $850, and was bound to pay it. Swift assigned his claim to the complainants; sold it for less than was due on it; but that matters not to Lind.

There was no attempt at evading the usury law. The sale was not made for that purpose.

The value of the land is said to be less than the face of the bond and mortgage. That was an additional inducement to Swift to sell.

V. What is the relief of the complainants? Clearly a decree for the whole amount of the bond and mortgage. Because—

1. The entire estate of Swift passed by his transfer; and that entire estate was the whole amount of the money due, principal and interest. If Swift were suing, there would be no question as to his right to recover. The complainants stand in his shoes, and are entitled to his rights.

2. This course can work no damage to Lind or his wife. They owed Swift $850, and have never paid it. They owe

it still, and ought in equity to pay it. It can work no damage to Pierson. He received his mortgage with notice of the mortgage of the complainants. Their mortgage was on record. The property was subject to that lien at the time he took his security, and that lien was for a just debt and a legal one.

In the case of *Donnington* v. *Meeker,* no deduction was made. None should be made here. The defendants have paid nothing upon the mortgage; no reduction has been made by them of the original debt, and no hard or unconscionable bargain driven with them.

*E. Schieffner,* for the defendants, Lind and wife.

1. On the sale of real estate covered by one or more mortgages, to the mortgagee, the mortgage or mortgages merge in the new deed of conveyance, and become null and void. The former mortgagee and new owner can, at a resale of the real estate in question to the former mortgagor and later conveyor, demand such a price as he thinks a fair equivalent for the real estate he is about to reconvey.

2. A sale by the former mortgagee and later owner of real estate, to a second wife of the former mortgagor and conveyor, which wife never had any interest in said real estate, concludes, if made with the knowledge and privity of other persons, as for instance the assignee of a bond and mortgage covering the real estate in question, any objection on their part that the conveyance to the former mortgagee was not a *bona fide* transaction, and that the said mortgagee never was a *bona fide* owner of the said real estate.

3. All notes, bills, bonds, mortgages, &c., made in the county of Essex, for the payment or delivery of any money loaned, on which a higher interest is reserved or taken than seven per cent., are utterly void. *Nix. Dig.* 401, § 1, 2; *Ibid.* 402, § 8.

4. Whatever form, shape, or disguise, a contract for the loan of money assumes, when the capital is returned, a profit made, or loss imposed, upon the necessities of the borrower

over the legal rate of interest, will constitute usury. And that usury may be committed by agreeing to take the legal interest on a larger sum than that really loaned. *Ely* v. *McClung,* 4 *Porter (Ala.)* 128; *Dowdall* v. *Lenox,* 2 *Edw. Ch. R.* 267; *Flood* v. *Shamburgh,* 3 *Cond. La. R.* 180.

5. The position of the defendant, Lind, when he negotiated the sale of the new mortgage, not yet drawn or executed, was like that of the maker of an accommodation note, which has been endorsed by somebody else, and on which the maker of the note and real borrower wishes to raise a loan by selling the same at a large discount. Such a transaction is within the statute against usury. *Holeman* v. *Hobson,* 8 *Humph. (Tenn.)* 127; 3 *Johns. Ch. R.* 395.

*Titsworth,* for the defendant, Pierson.

THE CHANCELLOR. The bill is filed to foreclose a mortgage given by Lind and wife to Abiel W. Swift, dated June 3d, 1861, for $850, payable in two years, with interest at seven per cent., payable semi-annually. The defence is that the mortgage was given for a usurious loan. The answer alleges that on the 4th of February, 1861, about four months before the date of the mortgage, the mortgagor purchased the premises of Swift for $500. That, having applied to the complainants for a loan of that amount, they agreed to lend him $550 upon his giving them a mortgage for $850, with interest at seven per cent., to which the mortgagor agreed. That thereupon, and about the 28th of May, 1861, it was agreed between the parties, that Swift should execute a deed for the land, expressing the consideration to be $850, that Lind and wife should give him a bond and mortgage for that amount, which should be assigned by him to the complainants for $550, and of that sum fifty dollars in cash should be paid to the mortgagor. That in pursuance of this arrangement, on the third of June, a deed was executed by Swift and wife to the wife of Lind, and thereupon the bond and mortgage for $850 were executed and delivered to Swift, and by him as-

signed to the complainants, and that of the $50 agreed to be paid to the mortgagor, he received but $25, the balance having been retained, as they allege, for fees and costs. That this sum of $25 was paid to the mortgagor about the 23d of August, at which time Swift received $500, the price of the lot. The answer alleges that the making and delivery of the bond, mortgage, and assignment, were all usurious, and that the consideration moneys mentioned therein were not actually paid, but were so stated and set forth to conceal a fraudulent and usurious transaction. The answer further insists that the bond and mortgage are usurious, because they were made and dated several months before the payment of the money loaned to the mortgagor.

The undisputed facts of the case are, that on the 22nd of May, 1857, William Lind, the mortgagor, being the owner of the mortgaged premises, and being largely indebted, by mortgage and otherwise, to Abiel W. Swift, conveyed the premises in fee, by deed of bargain and sale, to Swift, his creditor, in payment of his debt. The entire indebtedness was $1250, of which sum $850 had been secured by mortgage upon the premises. The deed was not given by way of mortgage, or as collateral security. The testimony of Mr. Swift is very express upon this point. In answer to the question whether he considered the deed made to him by Lind anything more than a security for the debt, he answered: " I considered it a *bona fide* sale. I don't consider he owed me anything after he made me the deed."

Lind, in fact, had been many years in the employ of Swift, and had become his debtor for advances made from time to time, to an amount beyond the value of his property. Swift had been an indulgent creditor, and permitted Lind, after the conveyance in payment of the debt, to remain upon the premises. Such being the relation of the parties, Lind still being in embarrassed circumstances, and the fee of the land remaining in Swift, in the year 1861, shortly before the date of this mortgage, Swift agreed to convey the land to the wife of Lind in fee, if he would pay him $500. To carry out

2 p *

that bargain this mortgage was made. Lind, by his answer, states that he applied to these complainants for a loan of $500, that they agreed to loan, and did loan him that amount of money, and took the mortgage in its present shape as a mere contrivance to cover up the usury. It is admitted that the complainants advanced upon the mortgage but $550, and for that sum advanced, they hold the defendant's bond and mortgage for $850, payable in two years, with interest at seven per cent.; an operation by which they realize in two years upon $550, a bonus of $342, over and above the legal rate of interest.

But it is urged that this was not a loan of the money from the complainants to the mortgagor, but a sale of the mortgage, and that the defendants had a right to purchase at any rate of discount, without being chargeable with usury. This appears to me a total misapprehension of the true character of the transaction. When the negotiation for this loan was entered upon, Lind was not the debtor of Swift. Swift was the owner of the land which had been conveyed to him by Lind in payment of the debt. He had agreed to reconvey the land to Lind, or, at Lind's request, to Lind's wife, for the sum of $500. For that amount Lind was desirous to effect a loan. But he had no security to offer till he could get the title. An arrangement is therefore made, by which Swift conveys the land in fee to Lind's wife for the nominal consideration of $850, and Lind, in return, gave Swift a bond and mortgage upon the premises for that amount, with the understanding that if the mortgagee received $500, his claim for the land was paid in full.

These papers were placed in the hands of the counsel or agent of all the parties, to raise the money and carry the arrangement into effect. As between the mortgagee and mortgagor, there is no pretence of usury. The mortgagee testifies expressly that he agreed to convey the land for $500. That was all that was due him, but the mortgage was taken above the sum of $500 for Lind's benefit, to enable him to raise the money upon it. All that was realized upon the

mortgage above that amount belonged to Lind, not to Swift. Swift's interest in the mortgage was limited to $500. That was all he claimed, and all he received. If the mortgage had been sold for its nominal value, $850, three hundred and fifty dollars of that amount would in equity have belonged to Lind, and he might have compelled the repayment of the money. To the extent of Swift's interest, the sale was negotiated and made for his benefit, but beyond that amount it was in reality negotiated and made for Lind's own benefit. The loan was, in fact, as the whole transaction shows, negotiated by him, and in reality for his benefit. That this was so understood, is shown by the fact that when the loan for $550 was effected, $500 was sent to the mortgagee, and the other $50 appropriated for the benefit of the mortgagor. How, then, can this be denominated a sale by the mortgagee of the mortgage? Is it not obvious that it was in reality an effort by the mortgagor to raise a loan upon his own mortgage, given to a third party, for an amount beyond the sum really due?

The papers themselves demonstrate that this must of necessity have been the real character of the transaction. The deed from Swift, the bond and mortgage from Lind and wife to Swift, and the assignment from Swift to the complainants, are all dated on the 3d, and acknowledged on the 4th of June, 1861. They are all drawn by the same scrivener, attested by the same witness, and acknowledged before the same master. They are obviously parts of one and the same transaction. The negotiation for the loan must have been entered upon and completed when there was no mortgage in existence, and when the fee of the land was in the mortgagee. These facts demonstrate the truth of the mortgagee's evidence, that he was to receive $500 for the land, and that the mortgage was made to be assigned for that amount. Beyond that sum the interest was in the mortgagor. As between the complainants and the mortgagor, the transaction was simply this: they loaned him $550, and took his mortgage for $850; and of the $50 loaned, they took $25 to pay the ex-

penses of preparing the papers and insuring the property, and appropriated the remaining $25 to pay a debt alleged to be due from the mortgagor to the brother of one of the mortgagees, who aided the mortgagor in negotiating the loan. The witness, indeed, testifies that the mortgagor promised him the whole $50 as a compensation for raising the money. A clearer case of usury it is difficult to imagine. To permit such a contract, established by clear testimony, to be enforced in a court of equity, would be a reproach to the administration of justice.

There is nothing in the evidence which can alter the essential character of the transaction. It is unnecessary, therefore, to discuss the credibility, or the competency of the evidence on the part of the complainants.

The complainants' counsel insists that the mortgagor has no ground of complaint, as he is in no wise injured by the transaction. That he gave a mortgage for $850. That he was indebted in that amount to Swift. That the mortgagee could have recovered the amount due on the face of the mortgage, and that the assignees are entitled to stand in his shoes. That the assignees are entitled to stand in the shoes of the mortgagee is true, but the whole fallacy of the argument consists in the assumption that the mortgagee was entitled to recover the face of the mortgage. Swift was entitled to $500, and it is clear that the assignees can recover no more. The apparent contradiction in the testimony of the witnesses on this point, is attributable mainly to the fact that they speak sometimes of the form, and sometimes of the substance of the transaction. In form, it was a sale and mortgage for $850. In reality, it was a sale and mortgage for $500. The apparent conflict in the testimony on this point, is rendered totally immaterial by the admitted facts that the mortgagee claimed and received but $500 upon the mortgage.

The bill alleges that the mortgage itself is usurious. This is a mistake; but I do not think the error is fatal. The mode in which the usury was taken is intelligibly stated, and substantially in accordance with the evidence.

The mortgage, however, was clearly not usurious. It was made for a legitimate purpose, though for a larger amount than was really due. There being no usury in its inception, no subsequent transaction can render it usurious. *Sloan* v. *Sommers*, 2 *Green's R.* 510; *Donnington* v. *Meeker*, 3 *Stockt.* 362.

There was due upon it from the mortgagor $500, which was paid by the complainants to the mortgagee, and which in equity they are entitled to receive. The contract by which they claim to recover $350 beyond that amount, was usurious and cannot be enforced. Under such circumstances, the mortgage will be deemed a security for the amount actually advanced. *Eagleson* v. *Shotwell*, 1 *Johns. Ch. R.* 536.

A decree will be made accordingly.